## Cincinnati, Newport & Covington Ry. Co. v. Brumleve, Director of Motor Transportation.

April 30, 1946.

Stephen L. Blakely for appellant.

Dennis B. Wooton, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DAWSON—Affirming.

This is a proceeding under the Declaratory Judgment Act to determine the liability of the appellant for a tag or seat tax imposed by KRS 281.520, the pertinent parts of which are as follows:

"(1) Except as provided in subsection (2) of this section, every common carrier and every contract carrier shall pay to the Director of the Division of Motor Transportation, for each motor vehicle operated by such carrier for the transportation of persons under a certificate or permit, a mileage tax equal to one-thirty-sixth of a cent for each regular seat in the vehicle multiplied by the total number of miles traveled, and, in addition, a tag tax equal to eight dollars for each regular seat for the first sixteen seats, fifteen dollars for each regular seat for the next eight seats, and twenty-five dollars for each regular seat for all remaining seats.

"(2) The mileage tax and tag tax imposed by subsection (1) of this section do not apply to taxicabs, city busses and U-drive-its, nor to vehicles operating under a certificate in interstate commerce where such vehicle does not enter the State of Kentucky a distance of more than ten miles from the point of entry into this state, but a tax of one dollar and fifty cents for each regular seat in such vehicles shall be paid."

It is contended that no tax is due because:

1. Appellant does not operate the vehicles but merely furnishes them to the Southeastern Greyhound Company, and the tax is imposed on the operator.

2. The tag tax law does not apply to the type of operation conducted by appellant.

3. The tax is confiscatory.

4. Such tax is invalid as an undue burden on interstate commerce.

The lower court held the appellant liable for these taxes and this appeal follows.

The Cincinnati, Newport & Covington Railway Company is a Kentucky corporation operating street cars, trolley coaches and gasoline busses in and around Newport, Covington and Cincinnati. These operations are over regular routes within the ten mile limit (KRS 281.520, subsection 2). Such operations are conducted under certificates issued by the Division of Motor Transportation of Kentucky and the Interstate Commerce Commission. The company is also authorized to operate contract and charter busses.

Several years ago appellant began to furnish busses to Southeastern Greyhound Company. It furnishes the busses and drivers and sends the equipment to points designated by Greyhound. The equipment is furnished under a lease arrangement set forth in letters between the railway company and the Greyhound company. There is no obligation on the part of the railway company to furnish any particular number of busses, and there is no obligation on the part of Greyhound to use any particular number of busses, the arrangement being that if Greyhound requires the use of equipment the railway company will furnish same if the vehicles are available.

While it is claimed that the railway company does not operate the busses which are leased to Greyhound and therefore it is not liable for the tax imposed on the operator, it is nevertheless true that the vehicles are furnished with drivers and the railway company pays all expenses of operations, including insurance and taxes. It seems to us that a sufficient answer to this contention is that if these busses were actually owned and operated by Greyhound the taxes would be collected from that company. No tag or seat tax is now being collected from these busses although they do not operate within the ten mile limit, and when furnished to the Greyhound Company are engaged in over-the-road operations between fixed termini.

It is vigorously argued that the operation of these busses by Greyhound is only occasional and merely incidental to the railway company's general business. It is true that the chief business of the railway company is the operation in and around the Covington, Newport and Cincinnati area and these operations are within the exemption specified in subsection 2 of KRS 281.520. It is also true that the tax levied by that subsection is regularly paid by the railway company. However, we can not agree that the leasing of these vehicles to the Greyhound is merely occasional or incidental to the main operations of the railway company. An examination of the exhibits filed with the depositions shows that the total mileage of the busses leased to Greyhound is substantial. Likewise the revenue derived from this operation is substantial.

The tax is not confiscatory. Apparently the tax if levied would average approximately $650 per bus. Considering the revenue derived from the leasing of the equipment it is clear that by no stretch of the imagination could the tax be designated as confiscatory. It seems to be admitted that all other companies conducting similar operations pay this tag or seat tax, and it is stated in the record that the appellant is the only company which has refused to pay. While this fact has no real bearing on the question, it is of some help in determining whether the tax is confiscatory.

The tax sought to be levied will be used for the maintenance of the public highways and the regulations of traffic thereon. It is well settled that a state may impose upon motor vehicles engaged in interstate commerce a charge or tax as compensation for the use of public highways, provided that such charge or tax is a fair contribution to the cost of constructing and maintaining such highways and of regulating the traffic thereon. Interstate Transit, Inc., v. Lindsey, 283 U. S. 183, 51 S. Ct. 380, 75 L. Ed. 953, and Sprout v. City of South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45.

It has been said that it was not the purpose of the commerce clause of the Constitution to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because the effect of the tax is to increase the cost of doing business. McGoldrick, Comp-

troller, etc. v. Berwind-White Coal Mining Company, 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876.

Since the proceeds of the tax sought to be levied against appellant are to be applied to the expenses of constructing and maintaining public highways of the state, and since such tax is merely a fair contribution from appellant, and is not more than its proportionate share of the cost of maintaining the public highways, such tax is not an undue burden on interstate commerce and is valid. If there were any doubt as to the constitutionality of this act such doubt must be resolved in favor of its validity. Martin, Commissioner of Revenue, et al. v. Nocero Ice Cream Company et al., 269 Ky. 151, 106 S. W. 2d 64. However, we entertain no such doubt, and the judgment of the lower court, being in accord with the views herein expressed, is affirmed.